### In re STANFORD CLOTHING CO.

(District Court, N. D. Alabama, S. D. April 28, 1911.)

No. 10,605.

1. BANKRUPTCY (§ 316*)—DEBTS OF FORMER CORPORATION—CLAIMS PROVABLE.
    A bankrupt purchased only part of the assets of a former insolvent corporation doing a similar business at the same stand. The bankrupt was used as a liquidating and collecting agent for the old company; the principal owners of both being the same, though there was not an identity of stock interest. *Held*, that renewal notes, executed by the new corporation to a bank, covering notes given for an indebtedness of the old corporation to the bank, without any new consideration, were not enforceable against the new corporation's estate in bankruptcy, under the rule that a corporation has no authority to pay the debts of a third person, in the absence of a binding obligation arising from an agreement to assume such third party's debts, based on a valuable consideration.

    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 316.*]

2. BILLS AND NOTES (§ 360*)—RENEWAL PAPER—EXECUTION BY THIRD PERSON—WANT OF CONSIDERATION—NOTICE.
    Where a bank, holding notes of an insolvent corporation, knew that renewal notes executed by the bankrupt, a new corporation organized to purchase and carry on the old corporation's business, constituted an agreement by the new corporation to pay the debts of the old, and that they were separate, legal entities, the bank was put on inquiry as to whether there was a valid consideration moving to the new corporation for such renewal notes, under the rule that payment by one corporation of the debts of another is not in the regular course of business, and that the taker of paper with notice that it is of that character does so at his peril.

    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 793; Dec. Dig. § 360.*]

In Bankruptcy. Proceedings for the settlement of the bankrupt estate of the Stanford Clothing Company. On petition to review a referee's order expunging the claim of the Jefferson County Savings Bank. Affirmed.

Campbell & Johnston and W. T. Hill, for petitioner.

Thompson & Thompson and Ullman & Winkler, for trustee in bankruptcy.

GRUBB, District Judge. This matter comes on to be heard upon the petition of the Jefferson County Savings Bank to review the order of the referee disallowing its claim against the estate of the bankrupt. By consent of all parties, additional testimony was taken before the judge upon the hearing of the petition. The facts are briefly stated as follows:

The Phillipson-Harper Clothing Company, a corporation, did a retail clothing and furnishing business in Birmingham. The corporation consisted of a number of stockholders; but the principal ownership was in Meyer & Simon, of Rochester, N. Y. The business was conducted unsuccessfully, and in the spring of 1910, having lost about $25,000, was insolvent, and was liquidated by Meyer & Simon, the principal owners, through one Stanford, who was in the employment

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of Meyer & Simon in a similar business at Atlanta. A liquidation sale was conducted, and a large part of the stock disposed of. Meyer & Simon proposed to organize a new corporation to take over the business of the old corporation at its old location. Stanford was requested to join in the organization of the new company, to take stock to be paid for out of its profits only, and to act as president, and to supervise the Birmingham business by weekly visits from Atlanta. Phillipson, who was a brother-in-law of M. C. Simon, of the firm of Meyer & Simon, had been the president of the Phillipson-Harper Clothing Company. He was a stockholder in the old company. He became general manager of the new company, and had charge of its affairs locally. The old company had borrowed $15,000 from the claimant, upon the indorsement of Meyer & Simon, who were reputed by the commercial agencies to be men of large resources. Part of the loan agreement was that the bank was to retain $3,000 of the loan on deposit, not subject to be checked upon. No part of this debt was ever paid by the old company, but it was renewed from time to time. The last renewal fell due May 5, 1910, after the Phillipson-Harper Clothing Company had ceased doing business and the Stanford Clothing Company had commenced business in the old stand.

Phillipson, after the new company had commenced business and before the maturity of the last renewals, went to Enslen, the cashier of the claimant bank, and stated to him, according to Phillipson's evidence, that the new company had been organized, that it had absorbed the old company and taken over its assets, and that Meyer & Simon were behind the new company as they had been behind the old. The witness Enslen testified that Phillipson, in addition, assured him that the new company would assume or take care of the obligations of the old. Phillipson asked for the same line of credit for the new company, and an additional credit of $10,000. Enslen agreed, after deliberation, to extend to the new company, on the same indorsements, the same line of credit it had extended to the old, but declined to increase it. Enslen also verified by correspondence with Meyer & Simon the statement of Phillipson that they were behind and would indorse for the new company. Before the maturity of the renewals of the old company, new notes of the Stanford Clothing Company were executed by Phillipson and forwarded to Meyer & Simon for their indorsement, and with it turned over to the claimant bank to take up the notes of the old company. The record shows that the proceeds of the discounts of the notes of the new company were used to pay the notes of the old company. The same agreement to leave a $3,000 balance with the bank, not subject to check, was entered into by Phillipson for the new company, and the bank balance of the old company in less amount was transferred to the new company in pursuance thereof.

The claim of the bank based on these notes is contested by the trustee upon the ground that they were accommodation paper as to the new company, and without consideration as to it, and that the bank was not a bona fide holder without notice of this fact. The correctness of the position of the trustee depends upon (1) whether there

was a valuable consideration moving to the Stanford Clothing Company for taking up the notes of the Phillipson-Harper Clothing Company; and (2) if not, was the bank chargeable with notice of the want of consideration.

[1] A corporation has no authority to pay the debts of a third person, partnership, or corporation, in the absence of a binding obligation arising from an agreement to assume such third party's·debts. based on a valuable consideration. The record fails to show that the Stanford Clothing Company entered into an agreement upon a valuable consideration to assume the debts of the Phillipson-Harper Clothing Company. The only witnesses examined as to the transactions between the two companies were Phillipson and Stanford. Even Phillipson's evidence fails to show that the Stanford Clothing Company agreed to assume the debts of the old company. He does say that it absorbed the old company and took over its assets. He nowhere says upon what terms the assets of the old company were taken over by the new, or upon what terms the absorption was accomplished. It is true that Enslen testifies that Phillipson told him that the new company would take care of the obligations of the old; but this is legitimate evidence only on the issue as to the want of notice on the part of the bank.

On the contrary, Stanford, who is a fair and disinterested witness, states clearly that he was assured, before the organization of the Stanford Clothing Company by M. C. Simon, who was promoting it, through him, that it would be entirely separate from the Phillipson-Harper Clothing Company and would not be responsible for its debts; that he consented to take part in its organization only .after this assurance, as he knew the Phillipson-Harper Clothing Company was in financial straits, and he did not want to identify his name and personality with a shaky concern. Stanford testifies that certain of the staples left unsold at the liquidation sale of the· Phillipson-Harper Clothing Company and the fixtures were taken by the new company under an agreement between the two companies that they were to be paid for by the new company at a fair valuation. Stanford positively states that they were not taken over under an agreement by the new company to take over the assets of the old and assume its liabilities; that the assets, outside of the fixtures, amounted to only $150 in value. Stanford says that, during liquidation of the old company, the net proceeds of the sales were forwarded to Meyer & Simon at Rochester. At the time of the organization of the new company certain improvements were made by it, and in payment of them funds derived from the accounts of the old company paid at the old stand were used, but were credited to the Phillipson-Harper Clothing Company, as was the value of the merchandise and the fixtures. Certain debts of the old company were paid out of the funds of the new, and charged to the account of the old, company. Stanford testified that he protested to Simon against such use of the new company's funds, as they were being needed to pay the new company's own obligations, and that Simon promised a settlement of the two companies' accounts on his coming to Birmingham, and stated that the new company's indebted-

ness to Meyer & Simon would amply protect it in this course. The evidence of Stanford shows that the new company assumed the possession of the store occupied by the old, without any arrangement or transfer of the lease, and that he did not know the old company had a lease on the store premises. He also testifies that he did not know of the giving by Phillipson of the new company's notes to the claimant bank in renewal of the old company's indebtedness.

The evidence is convincing that the relation between the two companies was not the taking over by the new company of the assets of the old, and, in consideration, assuming its obligations, but rather a purchase by the new company of a portion only of the assets of the old, and the use of the new company as a liquidating and collecting agent for the old; the principal owners of both being Meyer & Simon. The new company was permitted to occupy the premises of the old, it having ceased to do business, and the convenience arising from the same location, in view of the almost identical ownership of the two companies, made it natural that the new company should continue the prior work of Stanford in closing up the business of the old company and collecting its accounts, and that in so doing there should be a confusion in the use of the moneys of each; proper charges and credits being allowed and shown by the books.

If there was no agreement on the part of the Stanford Company to assume the debts of the Phillipson-Harper Clothing Company, in consideration of the transfer to it of the assets of the old company, then the notes given the bank by the Stanford Clothing Company were without consideration and void as against the Stanford Clothing Company, unless it was identical with the old company in ownership and in its creditors, and was merely the old company under a new name. The record abundantly shows that the Stanford Clothing Company was not only a separate legal entity, whose stock was owned by different parties and in different proportions from that of the old company, but that its creditors were also different; the Stanford Clothing Company having incurred new mercantile obligations outstanding when the petition was filed, amounting to about $25,000. A voluntary assumption of the indebtedness of the old company by the new would clearly be inoperative against those who were creditors of the new company alone.

[2] Was the bank a holder without notice of the want of consideration for the renewal paper? It is conceded that the bank's cashier had actual knowledge that the two corporations were separate legal entities, and that the new corporation was paying the debt of the old by the renewal transaction. This put him on inquiry as to whether a valid consideration existed for the renewal. Payment by one corporation of the debts of another is not in the regular course of business, and the taker of paper, with notice that it is of this character, takes it at his peril. Enslen says that he was informed by Phillipson that the new corporation would take care of the debts of the old. Phillipson says he told him that the new corporation had absorbed the old and taken over its assets, but did not testify that he told Enslen it had assumed the debts of the old.

In any event, the duty of inquiry resting on Enslen was not discharged by stopping his inquiry with Phillipson. He knew that Phillipson had negotiated the original loan for the old company; that he represented Meyer & Simon, the indorsers on the original paper, and was Simon's brother-in-law. In procuring the taking up of the notes of the old company by those of the new, he was acting in an adverse capacity to the new company. His interest, both through his ownership of stock in the old company and the indorsement of his brother-in-law on the old company's paper, was to obtain the release of the old company's obligation by the substitution of the new. Inquiry of a person with such an adverse interest to the new company is not sufficient. It is manifest that Enslen relied on the sufficiency of the indorsement of Meyer & Simon on the new paper as on the old, and was induced to refrain from further inquiry for this reason. Inquiry from Stanford, the president of the new company, was easy. Stanford was in Birmingham each week, and lived in Atlanta. Inquiry from him, as shown by his testimony, would have revealed the truth. He had no interest except in the new company.

The bank could not have held the Stanford Clothing Company on such voluntary notes, nor can it hold the estate of the bankrupt. The case of McLellan v. Detroit File Works, 56 Mich. 579, 582, 23 N. W. 321, 322, is in point. The court said:

"The case was such that the plaintiff must be deemed to have accepted renewals of the notes with knowledge of all the facts. They held partnership notes, and they accepted corporation notes in renewal; and they must be deemed to have known that an officer of a corporation can have no general authority to give the notes of the corporation to take up the outstanding obligations of members; special authority would be required to empower him to do so, and those persons who should venture to take such notes from him must, at their peril, ascertain whether this special authority has been conferred. * * * An officer of a corporation can never have implied authority to give such notes (renewal of another's debt). They are presumptively accommodation notes, given to take up the notes of third parties, and in order to support them it would be necessary to overcome the presumption against authority by express affirmative showing; the general authority to make notes for the corporation being insufficient for the purpose. [Citing cases.] The general authority to make commercial paper in the name of a corporation is given to be exercised for the benefit or in the business of the corporation, not for the benefit or in the business of others; and it is therefore obvious that one who takes such paper with knowledge that it is not given for a corporate purpose can have no claim to the protection which the law accords to a bona fide purchaser."

For these reasons, the action of the referee in disallowing the claim is confirmed, and the petition to review his ruling is denied, at the costs of the petitioner.